# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRUCE E. DUMOND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-11-114-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Bruce E. Dumond requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born August 7, 1966, and was forty-two years old at the time of the administrative hearing. (Tr. 21). He was a half-credit shy of graduating high school, and has worked as maintenance mechanic, tire and lube mechanic, bench mechanic helper, and security guard. (Tr. 15, 21-22). The claimant alleges that he has been unable to work since October 23, 2005, due to depression and right knee problems. (Tr. 139).

## Procedural History

On July 25, 2006, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated November 28, 2008. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), but that he should only be required to perform simple repetitive tasks and have incidental contact with the public. (Tr. 12).

The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e. g.*, escort driver, miscellaneous labor, inspector, and machine tender. (Tr. 16).

**Review**

The claimant's sole contention of error is that the ALJ failed to properly consider an opinion from the claimant's therapist, Ms. Pam Rusco. The Court finds that because the ALJ *did* improperly assess Ms. Rusco's opinion and further ignored a Third Party Function Report, the decision of the Commissioner must be reversed.

The claimant had the severe impairments of diabetes, hypertension, obesity, some degenerative joint disease of the right knee, some degenerative changes in the left foot, depression, and post-traumatic stress disorder (PTSD). (Tr. 10). As to his mental impairments, the claimant began attending therapy sessions at W.W. Hastings Indian Hospital on June 24, 2006. At that time, the claimant reported "waves of depression and anxiety." (Tr. 181). During his treatment, Ms. Rusco assessed the claimant with major depressive disorder, recurrent, moderate; panic disorder, with agoraphobia; and post-traumatic stress disorder. (Tr. 307, 320, 470). On August 1, 2006, the claimant reported that he had problems with depression, anxiety, and anger management, but he denied suicidal ideation and hallucinations. (Tr. 180). In November, he reported worsening depression, poor sleep, inability to do simple things, and mood swings, including rages with little or no provocation. Ms. Rusco noted that the claimant had a blunted affect, but that he had good grooming and hygiene and was coherent. (Tr. 323). Two weeks later,

the claimant reported feeling better, with decreased problems with anger and nightmares. (Tr. 321). Ms. Rusco noted on December 19 that the claimant was doing well, but had a sad affect and anxious mood. (Tr. 320). The claimant reported at his February 6, 2007 appointment that his medications were slowly helping to lift him from his depression, that his level of frustration was more manageable, and that he had not experienced panic attacks in several months. Ms. Rusco noted that his thoughts were goal-directed, that his affect was tired and anxious, but his appearance and speech were appropriate and he had experienced no hallucinations or delusions. (Tr. 307). On May 7, he reported increasing anxiety and irritability, disturbing dreams of self-harm, and two panic attacks. Ms. Rusco noted that the claimant appeared frustrated and tearful at times, that he was decompensating and that his medications were not as effective as they had been, but that he denied plans to harm himself. She then referred the claimant to Brookhaven Hospital for evaluation and treatment. The records from Brookhaven Hospital were not made part of this transcript. (Tr. 470). On July 19, the claimant reported sleeping problems and seemed to be focusing on the anniversary of his mother's death, while Ms. Rusco noted that the claimant had a sad affect and anxious mood, but that his appearance and speech were appropriate. (Tr. 557). Notes from August 1, 2007, indicate that the claimant had a blunted affect, but was well-oriented and had organized thoughts. (Tr. 549). On October 15, the claimant reported that his medications were not working well, that his sleep was very restless and was accompanied by disturbing nightmares, and that his symptoms worsened upon news of his delayed disability case. Ms. Rusco assessed the claimant as decompensating, gave him information on vocational rehabilitation and cognitive

restructuring, and instructed him to start keeping a journal. (Tr. 569). At his December 26, 2007 appointment, the claimant reported improved mood and motivation, which Ms. Rusco attributed to an increase in his depression medication. She further noted that the claimant had a tired affect and calm mood, and that he had lost fifty pounds. (Tr. 609). On February 4, 2008, the claimant reported family issues were causing increased anxiety, and that he was sleeping a lot; Ms. Rusco noted that the claimant was stable. (Tr. 600). On April 1, 2008, the claimant reported that he was dealing with his terminally ill father, but denied problems with appetite or sleep, and reported fewer nightmares. (Tr. 596). The claimant reported on June 12 that his father had died, that he was having family problems, and that he was on edge. (Tr. 614). On July 9, the claimant reported episodes of blacking out and sleepwalking, which he attributed to new medications and family stressors. Ms. Rusco assessed the claimant with increasing depression. (Tr. 612). In August 2008, Ms. Rusco completed a Mental Medical Source Statement regarding the claimant. She noted the claimant had marked or moderate limitations in all categories, elaborating that, "Mr. Dumond suffers from episodes of agitation [and] anger which are still not reliably under control. He also suffers from 'blackouts' when under increased stress; these dissociative episodes severely impact his ability to work at this time. He will be reevaluated in 6 mos." (Tr. 620-623).

The claimant's mother-in-law, Marie Herndon, completed a Third Party Function Report. (Tr. 147-154). She stated that the claimant only leaves the house for doctor appointments, and mostly stays in his bed. (Tr. 147). Additionally, she stated that the claimant used to participate in family activities and chores; that he used to enjoy cooking

for his family but now only prepares meals requiring little effort, such as sandwiches; that he lacks motivation to complete tasks; and that he spends money without regard to a budget or the family's income. (Tr. 148-150, 152). She asserted that the claimant does not like to be around people anymore, no longer socializes with family and friends, and does not handle stress or change well. (Tr. 152-153).

At the administrative hearing, the claimant testified that he does not drive on a regular basis because he struggles with anxiety and anger. (Tr. 24). He testified that his physical impairments included problems with his right knee, neck, and right shoulder, but he has not had surgery on them. (Tr. 26-27). As to his mental impairments, he agreed that his diagnoses included depression, anxiety, PTSD, and agoraphobia. (Tr. 30-31). The claimant's attorney noted that the claimant missed a number of appointments (Tr. 318, 325, 472, 479, 567, 583), and the claimant explained he does not like to heave his house and that he generally will only go if his wife or mother-in-law take him. (Tr. 32).

The ALJ summarized the claimant's testimony and the medical evidence. As to Ms. Rusco's treatment notes, he referred only to her diagnosis of major depressive disorder and notes from February 4, 2008 and April 6, 2008 describing the claimant as "stable," then referred to Ms. Rusco's assessment containing several marked limitations in various areas of functioning. (Tr. 13). The ALJ gave "great weight" to the opinions of the claimant's treating physicians, but gave Ms. Rusco's opinion "reduced weight because she is not a treating or prescribing physician and her opinion . . . is not consistent with the other medical opinions." (Tr. 14). The ALJ made no mention of Ms. Herndon's Third Party Function Report.

The ALJ was not required to give controlling weight to Ms. Rusco's opinion that the claimant's mental impairments "severely impact his ability to work," because such determinations are for the ALJ himself to make. *See, e. g.,* 20 C.F.R. § 404.1527(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). But Social Security regulations do provide for the proper consideration of "other source" opinions such as that provided by Ms. Rusco herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" and by considering 20 C.F.R. §§ 404.1527, 416.927 factors in determining the weight of these opinions), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *1; Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *6 (discussing considerations of evidence from sources who are not acceptable medical sources and stating that "[a]lthough there is a distinction between what an adjudicator *must consider* and what the adjudicator *must explain* in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.") [emphasis added]. The relevant factors for evaluating opinion evidence from other sources are: (i) length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other

evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether the claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p at *4-5; 20 C.F.R. § 404.1527(d). The ALJ made no reference whatever to these factors in connection with the evaluations by Ms. Rusco, and it is therefore unclear whether he considered any of them. *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [citations omitted]. Furthermore, the ALJ only referred to those portions of Ms. Rusco's assessment that found the claimant stable with a few marked limitations, and entirely ignored the sessions where she noted that the claimant was decompensating and that his condition was not yet under control. *See Taylor v. Schweiker*, 739 F.2d 1240, 1243 (7th Cir. 1984) ("'[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.'"), *quoting Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982). The ALJ's evaluation thus fell below the standards for evaluating "other source" opinions.

The ALJ also made a vague reference to "inconsistencies" between Ms. Rusco's opinion and that of the claimant's treating physicians, but he failed to specify what those inconsistencies were. The Commissioner argues that the ALJ's assertion was sufficient, but specific references to medical evidence on this point was essential because the ALJ's conclusion as to the claimant's abilities was at odds with Ms. Rusco's assessment that the claimant suffered from impairments that impeded his ability to work. *See, e. g.*, *Clifton*,

79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.") *citing Vincent ex rel. Vincent v. Heckler*, 739 F.3d 1393, 1394-1395 (9th Cir. 1984).

Finally, with regard to the Third Party Function Report, the ALJ wholly failed to mention it in his written decision. Social Security Ruling 06-03p (SSR 06-03p) provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from non-medical sources who have not seen the claimant in their professional capacity. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939. SSR 06-03p states, in part, that other source opinion evidence, such as those from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: (i) nature and extent of the relationship; (ii) whether the evidence is consistent with other evidence; and (iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6. Here, the ALJ made no mention of the Third Party Function Report at all, and as noted above it is therefore not clear whether he even considered this evidence in making his decision. *See, e. g., Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006) ("[T]he ALJ is not required to make specific written findings of credibility *only if* 'the written decision reflects that the ALJ considered the testimony,'") [emphasis added]. *See also Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) ("Without the benefit of the ALJ's findings supported by the weighing of this relevant evidence, we cannot determine whether his conclusion . . . is itself supported by substantial evidence."); *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989) ("[W]here the record on appeal is unclear as to

whether the ALJ applied the appropriate standard by considering all the evidence before him, the proper remedy is reversal and remand.").

Because the ALJ failed to properly consider the "other source" opinions provided by Ms. Rusco and Ms. Herndon, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 27th day of March, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma